*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re BH, Minor.

UNPUBLISHED
March 10, 2020

No. 350404
Gladwin Circuit Court
Family Division
LC No. 19-000008-NA

Before: CAMERON, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

Respondent-mother appeals the trial court's order terminating her parental rights to her minor child, BH, pursuant to MCL 712A.19b(3)(j) (reasonable likelihood that child will be harmed if returned to parent). We affirm.

## I. BASIC FACTS

The Department of Health and Human Services (DHHS) filed an initial petition for removal in January 2019. DHHS alleged that it was contrary to BH's welfare to remain within the custody and care of respondent because of the allegations that physical and sexual abuse had occurred within the home. Respondent has had an extensive history with Child Protective Services (CPS), with involvement beginning in 1997 and continuing through 2019. According to DHHS, removal in this case was proper because there was a reasonable likelihood that respondent would not cooperate with CPS and that the child might be exposed to an imminent risk of harm. The trial court authorized the removal of BH from respondent's home, and in May 2019, DHHS filed a supplemental petition seeking termination of respondent's parental rights. The termination hearing was held in August 2019.

The record reflects that respondent had often refused to allow any contact between CPS and the minor child. In addition, she had a history of being hostile and aggressive toward service providers. Although DHHS provided numerous services to respondent, testimony supported that she had stopped benefiting from them. Issues with the sanitary condition of respondent's home had formed the basis for removal on two prior occasions, and respondent was unable to consistently provide a sanitary and safe home for BH. Respondent had also placed BH at risk of sexual abuse, having ceased complying with a safety plan permitting her adult son to have contact with BH only in the presence of other adults. Respondent did not believe that her son posed a sexual risk, despite

-1-

her awareness of an assessment that determined her son had a heightened risk of sexually abusing BH because of his own prior sexual trauma.

The trial court found that statutory grounds for termination under MCL 712A.19b(3)(j) had been proven by clear and convincing evidence and that termination was in the best interests of the child.

## II. ANALYSIS

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Once a statutory ground for termination of parental rights has been established, the trial court must order the termination of parental rights if the trial court finds by a preponderance of the evidence that termination of parental rights is in the child's best interests. MCL 712A.19b(5); *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

The trial court's factual findings, determination of best interests, and findings that a ground for termination has been established are reviewed for clear error. MCR 3.977(K); *In re White*, 303 Mich App 701, 709, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

We first note that we are unable to discern any legal argument in respondent's brief on appeal. She has failed to specify any legal error and has failed to provide any legal authority supporting her position. Her argument consists of a three-sentence paragraph alleging that this Court should reverse because (1) she testified that she benefited from the services provided, (2) the testimony supported a finding that there was a bond between her and the child, and (3) any deficiencies will be cured if the child is returned to her. A party may not simply announce a position and then leave it up to this Court to discover and rationalize the basis for her claims, or unravel and elaborate for her potential arguments, and then search for authority either to sustain or reject her position, *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998), and failure to brief an issue adequately constitutes abandonment, *McIntosh v McIntosh*, 282 Mich App 471, 484; 768 NW2d 325 (2009).

In any event, the trial court did not clearly err by finding that termination of respondent's parental rights was proper under MCL 712A.19b(3)(j), which provides:

The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Evidence of a parent's failure to protect his or her child from injury and failure to maintain suitable housing for the child is sufficient to satisfy MCL 712A.19b(3)(j). See *VanDalen*, 293 Mich App at 141. Moreover, "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *White*, 303 Mich App at 711. A trial court may consider a respondent-parent's aggression and emotional stability when determining whether the child would be subject to harm if returned to respondent's care. See *In re Gonzales/Martinez*, 310 Mich App 426, 433; 871 NW2d 868 (2015).

The trial court did not clearly err by finding, by clear and convincing evidence, that there was a reasonable likelihood that BH would be harmed if returned to respondent's care. The court found that respondent posed a great risk to BH through her failure to abide by the safety plan. That plan provided that her son was not allowed to babysit BH or have contact with BH without other adults present. However, respondent would disregard the safety plan by attempting to leave BH alone with her son and by permitting them to sleep in the same bed. Therefore, the trial court properly found that respondent's continued disregard of the safety plan presented a reasonable likelihood BH would be harmed if returned.

When considering best interests, the focus is on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "The trial court should weigh all the evidence available to determine the child['s] best interests." *White*, 303 Mich App at 713. The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other factors that the trial court may consider include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714.

We also conclude that the trial court did not clearly err by finding that termination of respondent's parental rights was in the child's best interests. Although the trial court acknowledged that there was a bond between BH and respondent, it concluded that termination was in BH's best interests because of respondent's lack of compliance with the service plan and her failure to protect BH. Further, the trial court found respondent received access to numerous services provided by DHHS, but that she lacked the ability to benefit from these services because of her aggressive, threatening, and uncooperative behavior. This finding is supported by the witness testimony. According to a foster care worker, respondent was "frequently confrontational with service providers and the Department because she didn't necessarily like instruction or guidance . . . ." An evaluating psychologist concluded that it was extremely unlikely that respondent would benefit from services. Further, respondent also failed to protect BH from sexual risk because she continuously refused to abide by the safety plan.

We affirm.

/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro
/s/ Anica Letica

-3-